# Richmond.

## MRS. E. M. KELLEY, ALIAS MRS. MACK M. KELLEY v. COMMONWEALTH.

### November 13, 1924.

1. INTOXICATING LIQUORS—*Second Offense—Amendment of Indictment—Case at Bar.*—In the instant case, a prosecution for unlawfully storing ardent spirits for sale, the court did not err in permitting, under section 4877 of the Code of 1919, amendments of the indictment, consisting of striking out the charge that the offense mentioned in the indictment was committed "feloniously," and substituting the charge that the first offense mentioned in the indictment, of which it was alleged that there had been a prior conviction of the accused, was a conviction of a violation of section 17 of the prohibition laws (Acts 1918, ch. 388) instead of a violation of section 3a of such laws, and in proceeding with the trial as for a second offense which, under the theory adopted by both the accused and the Commonwealth, was merely a misdemeanor under said laws with the punishment enhanced thereby because of its being a second offense not declared by the statute to be a felony.

2. INTOXICATING LIQUORS—*Second Offense—Amendment of Indictment—Section 4877 of the Code of 1919—Change in the Character of the Offense Charged—Continuance—Case at Bar.*—An indictment charged that accused "did unlawfully and feloniously store for sale ardent spirits," and also charged that the accused had previously been convicted of a violation of section 3½ of the prohibition law. The court allowed the Commonwealth to amend the indictment by striking out the words "and feloniously," and also the figure and letter "3a," and to insert in lieu thereof the figures "17."

   *Held:* That the amendments in question did not change the character of the offense charged in the original indictment, within the meaning of section 4877 of the Code of 1919, allowing amendments that do not change the character of the offense charged; and that the amendments did not operate as a surprise to the accused, so as to entitle him to a continuance, where the court upon refusing the continuance announced that it would not receive any evidence of the prior conviction other than the record.

3. INTOXICATING LIQUORS—*Second Offense—Record as Evidence to Prior Offense.*—In a prosecution for violation of the prohibition act the trial

court did not err in ruling that it would not permit any evidence of an offense of which there had been a prior conviction of the accused other than the record of the prior trial and conviction.

4. CRIMINAL LAW—*Record of Prior Conviction—Extrinsic Evidence to Vary.*— In the absence of fraud, the record of a prior conviction imports a verity, and speaks for itself, and in a collateral proceeding no extrinsic evidence is admissible to alter or vary its import.

5. VERDICT—*Criminal Law—Charge of Several Offenses—General Verdict.*— Where an indictment charges three offenses a general verdict of guilty is, in contemplation of law, either a verdict finding the accused guilty of all three of the offenses upon the charges of which she was tried, or guilty of one or more of such offenses, and not guilty as to the others. And the judgment, having been entered in accordance with the verdict, was, in contemplation of law, a judgment convicting the accused of all three of such offenses, or of one or more of them, and acquitting her of the others.

6. INTOXICATING LIQUORS—*Second Offense—Record of Prior Conviction— General Verdict of Guilty where there is More than one Charge—Case at Bar.*—In the instant case, a prosecution for a second offense under the prohibition act, the record of the prior conviction showed that accused had been indicted for three offenses against the prohibition act and that there had been a general verdict of guilty.    Therefore the record of the prior conviction failed to show of what precise offense or offenses the prior conviction was had.    But the record did show that there had been a prior conviction of the accused of violating some one or more "of the provisions of this act" (to use the language of section 5 of the prohibition law), and failed to show that such conviction was of such an offense that the offense charged in the instant case was a subsequent offense declared to be a felony by such statute.    And, since no extrinsic evidence was admissible to alter or vary the record of the prior conviction, both the Commonwealth and the accused were bound thereby, and the instant case was and is, in the language of section 5 of the statute, a prosecution for a "subsequent offense committed after the first conviction, which is not declared a felony by this act."

7. INTOXICATING LIQUORS—*Jury Trial—Felony or Misdemeanor—Number of Jurors—Case at Bar.*—In the instant case, a prosecution under the prohibition act for a second offense, it was contended by accused that the indictment charged a felony and that therefore the accused should have been tried for a felony and by a jury properly constituted for such a trial instead of by a jury of five, because section 17 of the prohibition laws by its terms provides that "any subsequent violation of * * storing * * * * for sale * * in a place reputed to be a house of prostitution shall be deemed a felony."

*Held:* That there was no merit in this contention as it assumed that the prior conviction was of storing for sale which was not shown by the record thereof and left out of consideration the words of the statute in regard to a house of prostitution, etc.

8.⁷⁄₃ CRIMINAL LAW—*Appeal and Error—Inconsistent Positions—Trial on Theory that the Offense was a Misdemeanor—Contention in the Appellate Court that the Offense was a Felony.*—Where amendments to an indictment were made, and the trial thereupon was proceeded with upon the theory on the part of both the accused and the Commonwealth that the indictment as amended did not charge a felony but a misdemeanor, and the accused had the benefit of the trial on a charge of a misdemeanor, instead of a felony. Accused cannot change her position on appeal, and claim that the offense was a felony and not a misdemeanor.

9.⁷⁄₈ APPEAL AND ERROR—*Inconsistent Positions.*—The appellate court is not designed as an arena for the display of the ingenuity and technical skill of counsel, but to attain, as nearly and as speedily as may be, the ends of justice; and parties litigant may not play fast and loose with the court by taking inconsistent positions at different stages of the proceedings in court.

10.   INTOXICATING LIQUORS—*Prosecution of Storing for Sale—Cross-Examination of Accused as to Money in Her Possession.*—In a prosecution under the prohibition act for storing for sale accused may be asked on cross-examination as to how much money she had in her possession on the day her house was searched and liquor found. The possession by the accused of an unusual amount of currency, if disclosed, would have tended to show that she had been selling liquor; and if she had been selling liquor, that tended to show that it was probable that she intended to continue to do so and had stored the liquor in question for sale.

11.   CRIMINAL LAW—*Reasonable Doubt—Instructions—Instructions Fully Covered by Other Instructions.*—It is not error to refuse requested instructions on the subject of reasonable doubt when that subject was fully covered by the instructions given.

12.   VENUE—*Proof of Venue—Indirect Evidence of Venue—Matters of Common Knowledge.*—It was not error to refuse to set aside a verdict on the ground that there was no evidence to prove venue where, although there was no direct testimony appearing in the record proving the venue, there was sufficient indirect evidence and matters of common knowledge before the jury to warrant them in finding, as they did, that the offense was committed in the county alleged.

13.   VENUE—*Proof of Venue—Judicial Notice—Post Office—River.*—It is a fact of common knowledge, as shown by maps and directories in general use, that Longdale is a postoffice in Alleghany county, and such maps also show that the lower reaches of Wilson creek, where it approaches nearest to Longdale, is in Alleghany county.

14. VENUE—*Proof of Venue—Presumptions and Burden of Proof—Indirect Evidence.*—Venue, it is true, will not be presumed, but must be proved, and the burden is on the Commonwealth to prove it; but, in the absence of any direct evidence on the subject by either party, the Supreme Court of Appeals will not, for that reason, reverse the judgment of the trial court, if it can see from the indirect evidence disclosed by the record that the jury could not have had a reasonable doubt that the offense was committed within the venue laid in the indictment.

15. INTOXICATING LIQUORS—*Prosecution for Storing Liquor for Sale—Evidence Held Sufficient to Support Verdict of Guilty.*—The instant case, a prosecution for storing liquor for sale, was one of conflict of evidence involving the credibility of the different witnesses, and in which the verdict of the jury resolved that conflict against the accused. Upon resolving that conflict against the accused, there was ample evidence to support the finding of the jury.

*Held:* That the verdict could not be disturbed.

Error to a judgment of the Circuit Court of Alleghany county.

*Affirmed.*

The indictment, as returned by the grand jury, charged that the accused "did unlawfully and feloniously store for sale ardent spirits," and also, in the same count, charged that prior to said offense the accused, at a certain term of the circuit court set forth, had "been convicted of a violation of section 3a of the prohibition laws of the State of Virginia."

Before the trial, the court below, over the objection of the accused, allowed the attorney for the Commonwealth to amend the indictment by striking out the words "and feloniously," and also the figure and letter "3a" and to insert in lieu thereof the figures "17."

The accused thereupon moved for a continuance of the case, on the ground that the amendment of the indictment would necessitate evidence of witnesses as to the offense for which there had been a prior conviction, which witnesses were not necessary under the original

indictment and which had not been summoned and were not in attendance upon the court; but the court, stating, in substance, that it would not allow or receive any evidence of the prior conviction except the record of the court showing the prior trial and conviction, overruled the motion for a continuance, and, over the objection of the accused, proceeded with the trial.

Thereupon the accused pleaded not guilty and the court chose a panel of seven petit jurors found free from exception and duly qualified to try the accused, if she was charged by the indictment with a misdemeanor only. Whereupon, the accused moved the court to quash said panel of seven persons on the ground, in substance, that the accused, having been indicted by the grand jury for a felony, could not be tried by a petit jury; but the court overruled such motion and proceeded with the trial of the accused with a petit jury of five, chosen according to law from said panel of seven persons.

Upon the conclusion of the trial the jury found the following verdict: "We, the jury, find the defendant * * guilty as charged in the indictment and fix her punishment at six months in jail and $200.00 fine." Whereupon, the accused moved the court in arrest of judgment, which motion was overruled. The accused thereupon moved the court to set aside the verdict as contrary to the law and the evidence, which motion also the court overruled and entered judgment in accordance with the verdict.

Of the evidence and the facts, as shown by the evidence, this only need be said:

When the dwelling house of the accused was searched by the officers, under a search warrant, over one gallon of ardent spirits was found to be therein at the time, at different places therein. There were four rooms in the house, including the kitchen, in three of which liquor

was found. Some liquor was found in the kitchen, where the accused was in person when the officers entered, in a vessel setting in a corner opposite the table, in plain view of the accused. Some liquor was found on a table in the room next to the kitchen, in which there were two negroes discovered under such circumstances as to warrant the jury in inferring that they came to get liquor. A portion of the liquor in this room had been emptied out of a window while the officers were making their entry. A jar, dripping wet, which had evidently just been emptied of liquor, was found in a washstand in another room; and a box of ten or twelve cans was found under the bed, which appeared to have had corn whiskey in them.

The accused in her testimony denied all knowledge that the liquor was in the house, until the officers came and found it there, and she testified that after the officers found it she asked Javins, a man in her employment at certain hours during the day, but who did not lodge there, how the liquor happened to be there, and that Javins then told her that "he found it in the woods" and that she said to him: "What did you bring it in here for, don't you know that it will get you in trouble?" But the testimony for the Commonwealth was to the effect that when the officers confronted her with finding the liquor in her house, she told them, before she had any opportunity of seeing Javins after the arrival of the officers, that Javins brought the liquor into the house— that "she seemed to know all about his bringing it there" at the time he brought it in, and that she told the officers that what she told Javins was "that he had better pour it out."

While the officers were searching the house, Javins and a son of the accused, twelve or thirteen years old, were very busy pouring liquor out at different places.

Javins testified, it is true, that he brought the liquor into the house, and that the accused knew nothing of it until the search by the officers, but on cross-examination he testified that he knew nothing about a portion of the vessels which the officers testified they found, containing or as having recently contained liquor, and that he knew nothing of the box of cans above mentioned. Moreover, the testimony for the Commonwealth was to the effect that Javins did and said nothing on the day of the search taking upon himself the responsibility for the presence of the liquor in the house.

Further: The testimony of the accused, of Javins and of a Mr. Walton, witnesses for the accused, were in direct conflict on several material points; and there was evidence for the Commonwealth to the effect that the general reputation of the accused was that she was a violator of the prohibition law. There was also evidence for the accused to the effect that such reputation was to the contrary.

Other matters of evidence and the action of the court thereon, assigned as error, are referred to in the opinion.

The court gave the following instructions:

"The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that since the July term, 1923, of the Circuit Court of Alleghany county, the defendant, Mrs. Mack M. Kelley, stored ardent spirits for sale, or aided or assisted any other person in so doing, and if the jury further believe from the evidence beyond a reasonable doubt that the said Mrs. Mack M. Kelley is the same person who was convicted at the July term, 1923, of the Circuit Court of Alleghany county, as is shown by the record of the case of *Commonwealth* v. *Mrs. Mack M. Kelley*, and introduced in the evidence, then they should find the defendant guilty as charged in the indictment and fix her punish-

ment by confinement in jail for not less than six months nor more than twelve months and by a fine of not less than $100.00 nor more than $5,000.00.

"The court instructs the jury that when ardent spirits are found at any place searched under the provisions of the prohibition act, that the finding of ardent spirits is *prima facie* evidence of the unlawful storing for sale by the person occupying the premises.

"The court instructs the jury that in this case in arriving at their verdict as to whether Mrs. Kelley stored for sale ardent spirits since July term, 1923, of the Circuit Court of Alleghany county, they cannot take into consideration, and should not take into consideration, the fact that Mrs. Kelley has previously been convicted as a violator of the prohibition law, but that the jury can only consider this fact after they shall have come to a conclusion on the question of whether she stored liquor for sale as charged in the indictment, in assessing the punishment therefor.

"The court instructs the jury that the law is that the defendant, Mrs. Kelley, is presumed to be innocent of the crime charged against her in this case, and that they cannot find her guilty in this case unless the Commonwealth proves her guilty beyond all reasonable doubt by reliable, trustworthy evidence which the jury believes to be true beyond all reasonable doubt. And if the Commonwealth fails to prove Mrs. Kelley guilty beyond all reasonable doubt by reliable, trustworthy evidence, then the court tells the jury that they shall find the defendant not guilty.

"Although the jury may believe, beyond a reasonable doubt, that liquor has been kept or stored for sale in Mrs. Kelley's house since the July term of this court, 1923, if they further believe that this was done without her knowledge or consent, and that she neither aided,

abetted, encouraged or assisted in the enterprise, they should find her not guilty.

"If the jury have a reasonable doubt from the evidence whether or not, since the July term, 1923, of this court, Mrs. Kelley has kept whisky for sale in her house; or aided, abetted, encouraged or assisted any one else in so doing, the jury should find her not guilty.

"The court further instructs the jury that the jury are the sole judges of the weight to be given the evidence, and of the credibility of the witnesses who testified, and in determining the weight to be given the evidence of the witnesses, and the credibility of the witnesses, the jury may take into consideration the witnesses' demeanor on the witness stand, their manner of testifying, their motive, if any shown, for testifying as they do, and their interest, if any is shown, in the result of this trial. And the jury may take into consideration anything else affecting the credibility of the witnesses, and give such weight to their testimony as the jury believe it is entitled to.

"The court instructs the jury that if they believe from the evidence that the defendant is a person of good general reputation for veracity and that her general reputation for obeying the prohibition law is good, that this is legal and competent evidence in her behalf which they should take into consideration in arriving at their verdict along with all the other evidence in the case."

The court refused to give certain instructions which, so far as material, are set out in the opinion.

*O. B. Harvey*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General*, and *Lewis H. Machen, Assistant Attorney-General*, for the Commonwealth.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

The questions presented for decision by the assignments of error will be disposed of in their order as stated below.

[1] Did the court err in permitting the amendments of the indictment, consisting of striking out the charge that the offense mentioned in the indictment was committed "feloniously," and substituting the charge that the first offense mentioned in the indictment, of which it was alleged that there had been a prior conviction of the accused, was a conviction of a violation of section 17 of the prohibition laws (Acts 1918, chapter 388), instead of a violation of section 3a of such laws; and in proceeding with the trial as for a second offense which, under the theory adopted by both the accused and the Commonwealth, was merely a misdemeanor under said laws with the punishment enhanced thereby because of its being a second offense not declared by the statute to be a felony?

The question must be answered in the negative.

Section 4877 of the Code, so far as material, provides as follows: "At any time before the defendant pleads, a defective indictment for * * * felony may be amended by the court before which the trial is had that does not change the character of the offense charged. After such amendment has been made, the defendant shall be arraigned on the indictment as amended, and the trial shall proceed as if no amendment had been made; but if such amendment operates as a surprise to the defendant, he shall be entitled, upon request, to a continuance of the case."

The original indictment was "defective" if it charged that the prior conviction was of a different offense from

that for which such conviction was in fact had. This defect might, under the statute just quoted, be cured by amendments, if they did not change the character of the offense charged.

[2] The amendments in question did not change the character of the offense charged in the original indictment. The charge with respect to the conduct of the accused which was alleged as rendering the accused guilty of an offense remained unchanged, namely, that she "did unlawfully   *   *   store for sale ardent spirits." Precisely the same conduct on the part of the accused was charged in the amended as in the original indictment. The amendments of the indictment concerned merely the matter charged in aggravation of the offense as compared with the offense if it had been a first offense, and of the punishment therefor, under the statute; which did not at all change the character of the second offense itself for which the accused stood indicted. In so far as the second offense was concerned, the accused was given, by the indictment after it was amended, exactly the same information of the cause and nature of the accusation charged and against which she had to make her defense, as did the original indictment.

2. Did the court err in refusing to grant the accused a continuance after the amendments of the indictment were made?

The question must be answered in the negative.

As appears from the statute (section 4877 of the Code) above quoted, it was only in the event that the amendments operated as a surprise to the accused that she would have been entitled to a continuance. For the reasons just stated, the amendments could not have operated as a surprise to the accused so far as the second offense charged is concerned. Nor could they have operated as a surprise so far as the conviction of the first

offense charged is concerned, for the reason that the court, upon refusing the continuance, announced that it would not allow, or receive, any evidence of the conviction of the first offense other than the record of the court showing the prior trial and conviction. Such being the situation, the evidence which the accused is presumed to have come to the trial prepared to introduce in her defense under the original indictment was the only evidence which she could have introduced on the trial under the amended indictment. Hence, the refusal of the continuance did not deprive the accused of introducing any evidence which she could have introduced had the case been continued, so as to enable her to have had other witnesses at the trial to testify on the subject of the offense of which there had been a prior conviction.

[3] 3. Did the court err in ruling that it would not permit any evidence of the offense of which there had been a prior conviction of the accused other than the record of the trial and conviction.

The question must be answered in the negative.

[4] It is elementary that, in the absence of fraud, a record such as that in question imports a verity and speaks for itself; and that, in a collateral proceeding, no extrinsic evidence is admissible to alter or vary its import.

[5, 6] The record of the prior conviction in question was introduced in evidence on the trial in the instant case, and consisted merely of the indictment, the bill of particulars furnished by the Commonwealth, and the verdict and judgment. According to such record there were two counts in that indictment; the first being what is known as the "omnibus count," charging that the accused, and another, "did unlawfully * * store * * for sale, transport * *" (etc.) "ardent spirits"

and the second count charging that the same parties "did unlawfully have in possession ardent spirits." The accused, as shown by the bill of particulars, was tried in that case upon three charges: 1st. Upon the charge that she illegally "stored ardent spirits;" 2nd, that she was "illegally in possession of ardent spirits;" and 3rd, that she illegally "transported ardent spirits." There was a general verdict, which found that she was guilty "as charged in the indictment" and fixed her punishment "at a fine of $150.00." The judgment was entered accordingly.

The verdict being a general verdict, it was, in contemplation of law, either a verdict finding the accused guilty of all three of the offenses upon the charges of which she was tried, or guilty of one or more of such offenses and not guilty as to the others. And the judgment having been entered in accordance with the verdict was, in contemplation of law, a judgment convicting the accused of all three of such offenses, or of one or more of them and acquitting her of the others. *Pine & Scott* v. *Com'th*, 121 Va. 812, 93 S. E. 652.

It is true, therefore, that the record in question failed to show of what precise offense or offenses the prior conviction was had. But the record did show that there had been a prior conviction of the accused of violating some one or more "of the provisions of this act" (to use the language of section 5 of the prohibition law), and failed to show that such conviction was of such an offense that the offense charged in the instant case was a subsequent offense declared to be a felony by such statute. And since no extrinsic evidence was admissible to alter or vary the record of the prior conviction, both the Commonwealth and the accused were bound thereby, and the instant case was and is, in the language of section 5 of the statute, a prosecution for a "subsequent

offense committed after the first conviction, which is not declared a felony by this act;" which is a misdemeanor and for which the punishment prescribed by the statute "shall be a fine of not less than one hundred dollars, nor more than five thousand dollars, and imprisonment in jail for not less than six months nor more than one year," as the trial court correctly instructed the jury.

[7] In the reply brief for the accused the position is taken, for the first time, that the indictment as amended still charged a felony; and that therefore the accused should have been tried for a felony and by a jury properly constituted for such a trial, for the reason that section 17 of the prohibition laws by its terms provides that "any subsequent violation of  *  *  storing  *  * for sale · *  * (in a place reputed to be a house of prostitution) shall be deemed a felony." But this position assumes that the prior conviction was of "storing *  *  for sale," which, as we have seen, is not shown by the record thereof to have been such a conviction; and such position also leaves out of consideration the words of the statute which we have enclosed in brackets. For both of these reasons we think the position mentioned is untenable.

[8, 9] Moreover, it seems plain from the record that the amendments to the indictment were made and the trial thereupon was proceeded with upon the theory, on the part of both the accused and the Commonwealth, that the indictment as amended did not charge a felony, but a misdemeanor, consisting of the charge being of such a second offense as fell under the provisions of section 5 of the prohibition law prescribing punishment therefor as "a fine of not less than one hundred dollars nor more than five thousand dollars, and imprisonment in jail for not less than six months nor more than one

year;" and that the objections which were made in the trial court to the amendments and to the further proceedings thereafter were not on the ground that the amended indictment still charged a felony, but directly the contrary, namely, on the ground that the amended indictment undertook to change the character of the offense charged from a felony to a misdemeanor. That being the position taken by the accused on the trial, and having gotten the benefit of a trial on the charge of a misdemeanor instead of a felony, and having taken her chances to win out on the aforesaid position taken on the trial under the settled rule applicable in such case, she will not be heard to change that position on the appeal. The appellate court is not designed as an arena for the display of the ingenuity and technical skill of counsel, but to attain, as nearly and as speedily as may be, the ends of justice; and parties litigant may not play fast and loose with the court by taking inconsistent positions at different stages of the proceedings in court.

[10]    4. Did the court err in allowing the attorney for the Commonwealth to question the accused on cross-examination as to how much currency she had in her possession the day her dwelling was searched and the liquor found therein?

The cross-examination in question was as follows:

"Q. How much money did you have on you that day?

"A. I did not have any money.

"Q. Where was this money?

"Q. Did you have any money at your premises?

"A. Yes, I had some.

"Q. How much?

"A. I do not know.

"Q. $500.00.

"A. I do not know.

"Q. Somewhere between $500.00 and $1,000.00?

"A. I would say not.

"Q. Where did you get it?

"A. I got it out of the trunk. No, I got it out of the vase.

"Q. You put up upwards of $600.00    *    *    *

"A. Yes, but I borrowed it from Frank Green.

"Q. Will you tell the jury what denominations it was in?

"A. I do not know. I had some of my husband's. He left $200 there.

"Q. And you won't give the jury any idea how much money you had?

"A. I do not know; very little of my own."

In view of the fact that the other evidence for the Commonwealth tended to show that the accused was engaged in the business of the retail sale of liquor, and that she denied that she had made such sales, we think that the cross-examination in question was plainly relevant and that the court committed no error in permitting it. The possession by the accused of an unusual amount of currency, if disclosed, would have tended to show that she had been selling liquor; and if she had been selling liquor, that tended to show that it was probable that she intended to continue to do so and had stored the liquor in question for sale.

5. Did the court err in refusing to give instructions A, B, and E, offered for the accused?

These instructions were as follows:

Instruction "A." "The court instructs the jury that unless they believe from the evidence beyond a reasonable doubt that Mrs. Kelley knew the whiskey was in her house they must find her not guilty."

Instruction "B." "The court instructs the jury that although they may believe from the evidence that Mrs.

Kelley knew that Javins had the whiskey in her house, yet before they can convict her in this case they must be convinced beyond all reasonable doubt that Mrs. Kelley did some act to aid, abet, encourage or assist Javins in storing or keeping the said whiskey."

Instruction "E." "The court instructs the jury that if they have a reasonable doubt of the defendant being guilty as charged in the indictment in this case, either by reason of lack of evidence on behalf of the Commonwealth or by reason of the evidence offered in behalf of the defendant being in conflict with the Commonwealth's evidence, that such doubt must be decided in favor of the defendant and she must be found not guilty."

[11] As will be observed, these instructions were all on the subject of reasonable doubt. We think that subject was fully covered by the instructions given, which are copied above. It is expressly dealt with in as many as three of the instructions given, and as favorably to the accused as she was entitled to ask.

There are assignments of error based on the action of the court in giving the first and second of the instructions given, and in refusing to give other instructions offered for the accused, besides those mentioned above; and in refusing to quash the panel of seven jurors, resulting in the trial of the accused by a petit jury; but such assignments do not involve any questions which have not been disposed of above, and, hence, will not be specifically dealt with.

[12] 6. Did the court err in refusing to set aside the verdict, for the reason that there was no evidence before the jury sufficient to prove the venue in the instant case?

The question must be answered in the negative.

This question does not appear to have been raised in

the trial court; but seems to be presented for the first time in one of the assignments of error on the appeal.

It is true that there is no direct testimony appearing in the record proving the venue; but we think there was sufficient indirect evidence and matters of common knowledge before the jury to warrant them in finding, as they did, that the offense was committed in the county of Alleghany.

The indictment charged that the offense was committed in the county of Alleghany.   The verdict found the accused guilty as charged in the indictment.

[13, 14] The evidence showed that as a result of the finding of the liquor in her dwelling, the accused accompanied the officers to Covington, the county seat of Alleghany county; which it may be reasonably inferred would not have occurred if the dwelling where the offense, if it existed, was committed had not been in that county.   There was also testimony of witnesses for the accused to the effect that the dwelling of the accused was near Wilson's creek, in the neighborhood of Longdale.   It is a fact of common knowledge, as shown by maps and directories in general use, that Longdale is a postoffice in Alleghany county, and such maps also show that the lower reaches of Wilson creek, where it approaches nearest to Longdale, is in Alleghany county.   The case falls within the holding of *West* v. *Commonwealth*, 125 Va. 747, 750-2, 99 S. E. 654, and *Hart* v. *Commonwealth*, 131 Va. 736, 109 S. E. 582, where the reasoning of the court and the authorities upon which it is based are fully set forth.   The case of *Anderson* v. *Com'th*, 100 Va. 864, 42 S. E. 865, has been often cited as holding a contrary doctrine, but it must be deemed to be overruled in so far as it is in conflict with the cases cited.   Venue, it is true, will not be presumed, but must be proved, and the burden is on the

Commonwealth to prove it; but in the absence of any direct evidence on the subject by either party, this court will not for that reason reverse the judgment of the trial court if it can see from the indirect evidence disclosed by the record that the jury could not have had a reasonable doubt that the offense was committed within the venue laid in the indictment.

[15] 7. Did the court err in refusing to set aside the verdict as contrary to the evidence?

This question, likewise, must be answered in the negative.

As appears from the statement with respect to the facts preceding this opinion, which need not be repeated here, the case is one of conflict of evidence, involving the credibility of the different witnesses, and in which the verdict of the jury resolved that conflict against the accused. Upon resolving that conflict against the accused there was ample evidence to support the finding of the jury. Under the settled rules on the subject, we cannot disturb the verdict.

The case will be affirmed.

*Affirmed.*