# Richmond

EUGENE SULLIVAN V. COMMONWEALTH.

November 12, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*A. B. Hunt* and *B. G. Garrett*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

Eugene Sullivan, Harry Crawford and Eugene Thomas were jointly indicted by the grand jury in the Hustings Court of the city of Roanoke. There is but one count in the indictment which charges "that Eugene Sullivan, Harry Crawford and Eugene Thomas heretofore, towit on the ........ day of January, 1930, in the daytime of that day, within the jurisdiction of this court in the city of Roanoke, Virginia, *feloniously did break and enter a certain dwelling house,* which said dwelling house is situate within the city of Roanoke, Virginia, *with the unlawful and felonious intent to commit an assault therein upon one Joe Nash,* and with the unlawful and felonious intent to maim, disfigure, *disable and kill the said Joe Nash,* who was then and there in said dwelling house, and which said dwelling house was then and there occupied as a dwelling house by the said Joe Nash."

Eugene Sullivan and Harry Crawford were arraigned, and "plead not guilty to the charge of breaking and entering a dwelling house with intent to maim as alleged against them in the indictment." They thereupon moved the court for separate trials, and the Commonwealth elected to try Eugene Sullivan.

In bill of exception No. 1 it is certified "that before the commencement of this trial, the judge, on motion of counsel for the defense, required the attorney for the Commonwealth to elect under which section of the Code of Virginia the accused would be tried and the attorney for the Commonwealth stated that he would elect to try the defendant under section 4438."

No objection was made by the accused either to this ruling, which was made on his own motion, or to the statement of the attorney for the Commonwealth, in obedience thereto, that he elected to try the accused under section 4438. The trial thereupon proceeded, with the acquiescence of the accused, under that section, with express notice that he was being tried upon the charge that the breaking was with intent to commit murder.

The evidence introduced by the Commonwealth, if true, proves the following facts:

Joe Nash resided with his wife in an apartment on the second floor of a building on Salem avenue, in the city of Roanoke, where he sold intoxicating liquors. The entrance to this apartment was by a front door which gave entrance to a hall-way in which there was a flight of steps leading to the apartment above. This front door was not locked or bolted; but at the head of the stairs there was a door, giving entrance to the rooms occupied by Joe Nash, which was locked. At the side of this door was a peep-hole, which enabled the occupants of the apartment to see one presenting himself at the door before permitting him to enter.

During the afternoon of January 2, 1930, Harry Crawford, who had come to the apartment to buy liquor, had an altercation with the wife of Joe Nash, in the course of which he slapped her; and thereupon Joe Nash picked up a stick and hit him over the head with it, after which Crawford left the apartment.

A little later, between four and five o'clock in the afternoon, Joe Nash heard some persons coming up the steps in the hallway and looking through the peep-hole saw Harry Crawford, with a knife, Jimmy Patton with a knife, Joe Smith with a pair of knucks, and Eugene Sullivan with a pistol in hand coming up the stairway leading to his apartment.

Eugene Sullivan (accused) demanded that Nash open the

door. Joe Nash refused to open the door and asked them to leave. Sullivan then said: "Joe Nash, you will not flash any more knives on nobody else, you.........................., I have come to kill you; I will shoot the door down or break it down." He then fired several shots into the door, on the opposite side of which Nash was standing with his hand on the lock. One of the bullets fired struck the metal lock on the door, and others struck either the door or the partition wall through which the door gave entrance. After the first shot had been fired and threat made to kill him, Joe Nash ran out of the house by a rear exit.

Either Sullivan or one of the three men with him then broke out a panel of the door and reached in and unlocked the door; and all four men entered. Sullivan came in first with his pistol in his hand, and was followed by Harry Crawford.

After entering, Sullivan went into the dining room where he found W. M. Lockard asleep, and kicked him in the face, saying, "you get up, you have a knack of drawing knives on people too." He then struck Lockard again, and said, "where is that.........................Joe Nash, I will get him for cocking knives on people;" and in Lockard's hearing said that he was looking for Joe Nash to kill him, and that he would kill him if he saw him. He then went into the kitchen with his pistol in his hand, and in the presence of the negro servant pulled out a knife and said, "this is one time we will fix Joe Nash."

In a short time Sullivan left the house by the front door and went out on the street, where he met H. J. Shepherd and M. L. Harvey, two police officers of the city of Roanoke, who were in conference with Joe Nash when he walked up. However, no arrest of Sullivan was made until the next day.

Then, in support of his defense as upon a plea of not guilty, the accused, Sullivan, testified that he had no pistol, fired none of the shots, did not himself break in the door, and

did not threaten to kill Joe Nash; and in these denials he is corroborated by other witnesses. He testified that his reason for being there was to get a drink of whiskey.

As to these conflicts in the testimony it is only necessary to say that the testimony for the Commonwealth is sufficient to support the verdict.

The court gave but one instruction, which seems to have been orally and extemporaneously delivered, and is as follows:

"The court instructs you that the burden is upon the Commonwealth to prove the guilt of this man beyond a reasonable doubt by reliable evidence. If you believe beyond a reasonable doubt that Eugene Sullivan did this shooting, or if you believe he was with others, aiding and abetting, whether or not he actually did the shooting, and if you believe that this was done with intent to commit murder, rape or robbery, you will find him guilty and fix his punishment at not less than three nor more than fifteen years. The burden is upon the Commonwealth to prove beyond a reasonable doubt. If you find him not guilty you will say so. You can only arrive at the intent of a man from what he does or what he says, and in this case the burden is upon the Commonwealth to prove the intent as well as the facts.

"Rid your minds of whether or not this was a bootlegging joint or not, and treat it as if it were the home of any other man in this city, white or colored, and do not let the fact that it was a bootlegging joint have any influence on you."

The attorney for the accused objected to this instruction, and assigned this and no other ground of objection thereto:

"The instruction is predicated upon section 4438 of the Code, while the indictment is drawn under section 4439 of the Code, and that the indictment in this case is fatally defective as an indictment under section 4438 of the Code, and that the instruction states the punishment at not less than three nor more than fifteen years, while the punishment under section 4439 is from two to ten years."

The jury returned a verdict which read: "We, the jury, find the defendant guilty and fix his sentence at five years." Whereupon the court directed the jury to amend its verdict to read: "We, the jury, find the defendant guilty, as charged, and fix his punishment at five years in the penitentiary," which the jury did.

The accused moved the court to set aside the verdict and grant him a new trial "upon the ground that the same was contrary to the law and the evidence, and a misdirection of the jury," which so far as the record discloses was the only specification of the grounds upon which the defendant moved the court to set aside the verdict. The court overruled the motion and entered judgment thereon.

█ The first assignment of error is that "the court erred in permitting the indictment to be tried upon section 4438 of the Code of Virginia at the election of the Commonwealth's attorney, even though the defendant by counsel required the Commonwealth's attorney to elect under which section of the Code the accused would be tried."

This assignment is inaccurately phrased, for the court required this election in response to a motion of the attorney for the accused.

The second assignment of error is that the court erred in instructing the jury that the jury could, under this indictment, find the accused guilty of breaking and entering with *intent to commit murder, rape or robbery* and fix his punishment at from three to fifteen years in the penitentiary—that is, the punishment prescribed for the offense specified in section 4438 of the Code—and should have instructed the jury that under this indictment the greatest offense for which Sullivan could be found guilty was breaking and entering with intent to maim, disfigure, disable and kill Joe Nash, and that if it found him guilty of such charge, it should fix his punishment, in accordance with the provisions of section 4439, at not less than one nor more than ten years

in the penitentiary, or, in its discretion, at confinement in jail not exceeding twelve months and a fine of not exceeding $500.00.

Neither of these assignments of error can be sustained.

Virginia Code 1919, section 4438, reads: "If any person in the night enter without breaking or in the daytime break and enter a dwelling house or an outhouse adjoining thereto and occupied therewith, or in the nighttime enter without breaking or break and enter either in the daytime or nighttime any office, shop, storehouse, warehouse, banking house or other house, or any ship or vessel or river craft or any railroad car with intent to commit murder, rape, or robbery, he shall be confined in the penitentiary not less than three nor more than fifteen years."

Virginia Code 1919, section 4439 (as amended by laws 1928, chapter 163) reads: "If any person do any of the acts mentioned in the preceding section, with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be confined in the penitentiary not less than one year nor more than ten years, or, in the discretion of the jury, confined in jail not exceeding twelve months, and fined not exceeding $500.00. If any person, armed with a deadly weapon, shall enter any banking house, in the daytime or in the nighttime, with intent to commit larceny of money, bonds, notes, or other evidence of debt therein, he shall be punished with death, or by confinement in the penitentiary for life, or for any term not less than five years."

The indictment charged a breaking and entering with the intent to maim, disable, disfigure and kill, and that which was done in this case upon motion of the accused was, in its effect, to amend the indictment after plea filed, at the suggestion and with the acquiescence of the accused, so as to accord better with the testimony, and specifically to charge the accused with breaking and entering the dwelling house of Joe Nash with the intent to commit murder, rape, or robbery therein.

Such an amendment is permissible under Va. Code 1919, section 4878, which reads:

"If there be any defect in form in any indictment for treason or felony, it shall be competent for the court in which the case is pending for trial, after the defendant pleads, to amend the said indictment, provided such amendment does not change the nature of the offense charged; and if, on the trial of any case, there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof, it shall be competent for the court before which the trial is had to amend the said indictment, according to the proof, provided such amendment does not change the nature of the offense charged; and after such amendment the indictment as amended shall be read to the accused, and he shall be allowed to plead anew, if he so desires, and the trial shall proceed in all respects, and with the same consequences, as if no variance had occurred, unless such amendment shall operate as a surprise to the defendant, in which case the defendant shall be entitled, upon request, to a continuance of the cause."

The two sections (4438 and 4439) might well have been combined for they refer directly, though not solely, to, and define as an offense, the breaking and entering of a dwelling house in the daytime, with intent to commit murder, rape, or robbery (4438), or larceny, or any felony other than murder, rape, or robbery (4439). The overt acts constituting the crime are the same—that is, the breaking and entering. The intent with which the particular crime is committed does not change its general nature or character, because whichever intent is shown, the crime is of the same nature—that is, a felony of the specific class denounced by the statute. That the punishment for such a crime differs with the differing intent does not within the meaning of Code, section 4878, authorizing amendment to indictments, change the nature of the crime charged. That statute is

remedial, and in accordance with the accepted rule should be construed liberally to correct the evil at which it is directed, and to promote the remedy thereby provided. The legislative intent is to simplify criminal procedure. A narrow construction of the statute (4878) would defeat its wise purpose. We are in full accord with that purpose.

The manifest purpose of this statute is to allow amendments which avoid unnecessary delays and further the ends of justice, without prejudice to the substantial right of the accused to be informed of the accusation, and to one fair trial on the merits. *Jennings* v. *Commonwealth*, 133 Va. 726, 112 S. E. 602; *Young* v. *Commonwealth*, 155 Va. 1156, 156 S. E. 565.

That the bare fact that the amendment allowed authorizes a greater punishment than that authorized for the offense charged in the original indictment does not of itself change the character of the offense charged, is expressly held in *Kelley* v. *Commonwealth*, 140 Va. 522, 125 S. E. 437, 440, where we find this expression: "The amendments in question did not change the character of the offense charged in the original indictment. The charge with respect to the conduct of the accused which was alleged as rendering the accused guilty of an offense remained unchanged, namely, that she 'did unlawfully * * * store for sale ardent spirits.' Precisely the same conduct on the part of the accused was charged in the amended as in the original indictment. The amendments of the indictment concerned merely the matter charged in aggravation of the offense as compared with the offense if it had been a first offense, and of the punishment therefor, under the statute; which did not at all change the character of the second offense itself for which the accused stood indicted. In so far as the second offense was concerned, the accused was given, by the indictment after it was amended, exactly the same information of the cause and nature of the accusation charged and

against which she had to make her defense, as did the original indictment."

■ So, in this case, the bare fact that the amendment so allowed charged a different intent, though based on the same overt acts, *i. e.*, breaking, entering and shooting, which intent, while if proved would enhance the punishment, nevertheless did not, within the meaning of the statute, change the nature of the offense charged in the original indictment. As amended the indictment still charged a felony of the same general nature or class.

■ Just why the attorney for the accused moved the court to require the attorney for the Commonwealth to elect under which of the sections he would prosecute the accused does not appear. We shall therefore not speculate as to the motive. Whatever the motive, the same consequences follow. The accused acquiesced in the prosecution for a breaking and entering with intent to commit murder, rape or robbery. That was the charge which he defended and about which he testified. After the evidence had been concluded he should not have been permitted to claim that he could not be prosecuted under section 4438. By this acquiescence he waived the right to make that contention because it was inconsistent with his own motion to require the prosecutor to elect under which section he should be tried. The motion, by necessary implication, conceded the right to try the accused under either section. Though the procedure was so irregular, the accused cannot be allowed to take advantage of an irregularity for which he is directly responsible. He cannot approbate and reprobate—invite error and then take advantage of his own wrong.

■ There is still another view of the case which leads to the same result. The failure to instruct the jury as to the extreme punishment permitted under section 4439, *i. e.*, not less than one nor more than ten years confinement in the penitentiary, even had it been error, should be held to be

immaterial under the circumstances of this case, because the term fixed by the jury is within these limits, *i. e.*, five years. He might have been prosecuted under either section, and the fact that the jury refused to fix the minimum allowance under section 4438, *i. e.*, three years, suggests the conclusion that as they exceeded that minimum, they would, under the same testimony, also have exceeded the one year (or other lesser penalty) authorized had he been prosecuted under section 4439.

The term fixed by the jury being within the limits prescribed by both sections, even if the instruction had been erroneous, it would not, under the facts of this case, justify a reversal.

The case, then, is one which calls for the application of Code, section 6331, which forbids this court to reverse any judgment "for any error committed on the trial, where it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." *Walker* v. *Commonwealth*, 144 Va. 651, 131 S. E. 230.

Our conclusion, therefore, is to affirm the judgment.

*Affirmed.*

EPES, J., dissenting.

The outstanding feature of this case is that the accused has been tried and convicted for an offense for which he was not indicted.

The evidence tending to support a finding that the accused is guilty of the offense for which he was indicted is strong, and there is evidence to support a finding that the accused is guilty of the offense for which he was tried. Therefore, in the instant case the conclusion reached by the court probably has the merit of authorizing a punishment which should be ultimately administered to the accused without putting the Commonwealth to the delay and ex-

pense of a new trial. But I find myself forced to dissent from the judgment of the court, for the reason that I am not able to concur in the propositions of law which the court has found it necessary to assert in order to escape the necessity of reversing the case and remanding it for a new trial. Nor have I myself been able to find how the judgment may be sustained without violating what seem to me to be sound legal principles, and wise rules of legal procedure which have been established to protect those who are innocent from unwarranted prosecutions.

Sections 4437, 4438 and 4439, Code Va. 1919, relating to breaking and entering the dwelling house of another, read, so far as is here material, as follows:

Section 4437—"If any person break and enter the dwelling house of another in the nighttime with intent to commit a felony therein * * * he shall be punished with death, or, in the discretion of the jury, by confinement in the penitentiary not less than five nor more than eighteen years."

Section 4438—"If any person in the nighttime enter without breaking or in the daytime break and enter a dwelling house * * * with intent to commit murder, rape or robbery, he shall be confined in the penitentiary not less than three nor more than fifteen years."

Section 4439—"If any person do any of the acts mentioned in the preceding section, with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be confined in the penitentiary not less than one year nor more than ten years, or, in the discretion of the jury, confined in jail not exceeding twelve months, and fined not exceeding $500.00."

These three sections make every breaking and entering of the dwelling house of another with intent to commit a felony therein a felony, just as sections 4393-4397 make every unlawful homicide, including involuntary manslaughter, a felony. But just as sections 4393-4397 divide felonious

homicide into a crime of four degrees, each higher degree of which contains at least one essential element which is essentially different from any element contained in the lower degrees of the crime, so sections 4437-4439 divide felonious breaking and entering of a dwelling house into three distinct degrees of crime depending upon the *time* at which and the *specific felonious intent* with which the act is done.

The indictment found by the grand jury charged that "Eugene Sullivan, Harry Crawford and Eugene Thomas * * * in the daytime * * * feloniously did break and enter a certain dwelling house * * * with the unlawful and felonious intent to commit an assault therein upon one Joe Nash, and with the unlawful and felonious intent to *maim, disfigure, disable and kill* the said Joe Nash."

While it is no part of the indictment it may not be amiss to note the indorsement on the back thereof which reads: "Indictment for breaking and entering with intent to maim. A felony. A true bill. Henry Scholz, foreman."

As seems to be clearly recognized by the court in its opinion, this is an indictment under section 4439 for breaking and entering a dwelling house with intent to commit therein a felony *other than* murder, rape or robbery.

Eugene Sullivan and Harry Crawford, says the record, "plead not guilty to the charge of breaking and entering a dwelling house with intent to maim as alleged against them in the indictment, and for their trial put themselves upon the country." Whereupon, the accused having moved for a severance, the Commonwealth elected to try Eugene Sullivan first.

In the language of the record, "before the commencement of this trial," (which from the context I take to mean before the taking of evidence was begun) "the judge, on motion of counsel for the defense, required the attorney for the Commonwealth to elect under which section of the Code of Vir-

ginia the accused would be tried; and the attorney for the Commonwealth stated that he would elect to try the defendant under section 4438."

No point was at this time made by the accused that the indictment did not charge breaking and entering with intent to commit murder, rape or robbery; and both the Commonwealth and the accused introduced their evidence without further reference to this subject.

The evidence was conflicting, but the evidence introduced by the Commonwealth, if believed, was sufficient to sustain a conviction of either the crime for which he was indicted or that for which the court instructed the jury he could be convicted.

Upon the conclusion of the evidence, the court gave the jury the following oral instruction, which was the only instruction given:

"The court instructs you (addressing the jury) that the burden is upon the Commonwealth to prove the guilt of this man beyond a reasonable doubt by reliable evidence. If you believe beyond a reasonable doubt that Eugene Sullivan did this shooting, or if you believe he was with others, aiding and abetting, whether or not he actually did the shooting, and if you believe that this was done with intent to commit murder, rape or robbery, you will find him guilty and fix his punishment at not less than three nor more than fifteen years. The burden is upon the Commonwealth to prove beyond a reasonable doubt. If you find him not guilty you will say so. You can only arrive at the intent of a man from what he does or what he says, and in this case the burden is upon the Commonwealth to prove the intent as well as the facts.

"Rid your minds of whether or not this was a bootlegging joint or not, and treat it as if it were the home of any other man in this city, white or colored, and do not let the fact that it was a bootlegging joint have any influence on you."

The giving of this instruction beyond question had the effect of putting the accused on trial for breaking and entering with intent to commit murder, rape or robbery; and, I think, stamps his conviction as a conviction for that crime.

The accused objected to this instruction. The ground of his objection was somewhat inartificially stated, but the gist of it is this: The instruction is erroneous, because the accused stands indicted under section 4439 for breaking and entering with intent to commit a felony other than murder, rape or robbery, for which the punishment is from one to ten years in the penitentiary, or, in the discretion of the jury, confinement in jail for not exceeding twelve months and a fine of not exceeding $500.00; but the instruction, in effect, tells the jury that he is being tried for, and may be convicted of, breaking and entering with intent to commit murder, rape or robbery, and that if it finds him guilty, they shall fix his punishment in accordance with the provision of section 4438 at from three to five years imprisonment.

No other ground of objection to the instruction was stated in the trial court. Two other grounds of objection are assigned in this court for the first time, which, however, point out such patent errors in the instruction that it is hardly possible that the trial court would not have corrected these defects had they been called to its attention.

The jury returned the verdict, "we, the jury, find the defendant guilty and fix his sentence at five years," which at the direction of the court the jury amended to read, "we, the jury, find the defendant guilty, as charged, and fix his punishment at five years in the penitentiary."

The accused moved to set the verdict aside for misdirection of the jury. But the court overruled the motion and entered judgment in accordance with the verdict.

The first error here assigned is that the court erred in giving the instruction above mentioned for the reason given at the time, which has been above stated.

The common law rule is that no person may be put upon trial for any felony for which he has not been indicted by the grand jury. (*Matthews* v. *Com.*, 18 Gratt. [59 Va.] 989). This rule of the common law was made statutory in Virginia at an early time; and still, and I think wisely, remains the law in the State. Code 1849, chapter 207, section 1; Code 1887, section 3990; Code 1919, section 4866.

Section 4866, Code 1919, in so far as it is here material, reads: ' No person shall be put upon trial for any felony unless an indictment shall have first been found by a grand jury in a court of competent jurisdiction."

The object of this provision is not merely to give the accused notice of the offense with which he is charged and for which he is being tried. That might be as well done by a warrant, information or presentment. Its primary object is to protect the great mass of law-abiding people against unwarranted prosecutions upon charges of a serious nature by requiring that before a man may be put on trial for a felony there must be produced before a grand jury, taken from the body of the people, sufficient evidence to satisfy at least nine of them, if it be a regular grand jury, and five of them, if it be a special grand jury, that the accused is *prima facie* guilty of the crime with which he is charged.

In some quarters the view seems to prevail that the grand jury has outlived its usefulness and should be abolished; or, at least, that the above quoted statute should be repealed and trials on felony charges should be permitted to be had on informations or presentments made by the Commonwealth's attorney, or warrants sworn out by the accusers. In this view I do not concur.

By the abolition of the grand jury, or by permitting felony charges to be tried upon presentments or warrants, it may be that the prosecution of the guilty may be expedited and accomplished with greater ease and less trouble to prosecuting officers; but the protection of the innocent against un-

warranted prosecution which has for so long been afforded by the grand jury will have been abandoned.

It should not be forgotten that the rules of and restrictions thrown around criminal procedure are for the protection of the innocent. Unfortunately they sometimes result in delay in punishing the guilty and occasionally in his escaping punishment; but they must be applied to trials of those in fact guilty as well as to those in fact innocent. In no other way can the innocent be assured of their protection.

In discussing the statute here under consideration Moncure, P., says, in *Matthews* v. *Com.*, 18 Gratt. (59 Va.) 989, at page 998:

"This is certainly the rule of the common law, which authorizes the Attorney-General to exhibit an *ex officio* information for any misdemeanor whatever, but not for felony; it being required in all cases of felony that the accusation should be warranted by the oath of twelve men before the defendant can be put to answer it." And in the next paragraph he makes his very apt comment: "We should not impute to the legislature an intention to change a rule of the common law which has received so many solemn sanctions, without the clearest evidence of such intention; especially a rule which was established for the protection of life, liberty and character."

As has been said, the court in its opinion seems to recognize that in the instant case the accused has been tried for and convicted of a felony for which he has not been indicted by a grand jury. But it holds that this is not reversible error, because the indictment was, in effect, amended at the bar of the court to charge breaking and entering with intent to commit murder, rape or robbery by the announcement of the Commonwealth's attorney that he elected to try the accused under section 4438, and such an amendment is authorized by section 4877 and section 4878 of the Code.

I am unable to concur with the court in either of the premises upon which it bases this conclusion.

The announcement by the Commonwealth's attorney that he elected to try the accused under section 4438 was not a request by him that the indictment be so amended as to charge that the accused broke and entered with intent to commit murder, rape or robbery, but an assertion by him that the indictment as found charged such a crime. The fact is that the indictment was not amended; and the record repels the view that either the Commonwealth's attorney, or the counsel for the accused, or the court ever had any intention that the indictment should be amended.

The most that can be said is that at that time the court and Commonwealth's attorney seem to have thought that the indictment did charge breaking and entering with intent to commit murder, rape or robbery; and that counsel for the accused either then entertained the same view or failed then to make any objection to the construction placed upon the indictment by the court and Commonwealth's attorney.

I agree with the court that after what had taken place, the accused unquestionably had notice of the fact that he was being tried for breaking and entering with intention to commit murder, rape or robbery. But notice to the accused of the offense for which he is being tried and an opportunity to make defense thereto does not meet the requirements of the statute here under consideration, section 4866.

The requirement of that statute is that even though the accused be given notice of the felony charged and an opportunity to defend, he may not be tried for that felony unless he has been indicted therefor by the grand jury.

It is plain that there was no amendment of the indictment made or intended to be made. It seems equally plain that the accused has been tried for a felony for which he was not indicted; and that this is an objection which, unless it has

·been waived, may be asserted in the trial court even after verdict rendered, and that it may even be raised in this court for the first time. *Matthews* v. *Com.*, 18 Gratt. (59 Va.) 989; *Simmons* v. *Com.*, 89 Va. 156, 15 S. E. 386; *Com.* v. *Cawood*, 2 Va. Cas. (4 Va.) 527; *Shifflet* v. *Com.*, 14 Gratt. (55 Va.) 652, 667.

The question whether an accused person may waive the right to insist that he shall not be put on trial for a felony for which he has not been indicted seems never to have been decided in Virginia; but on the other hand, in no decided case, so far as I have been able to ascertain, has this court ever held that the right had been waived, even when the point was raised for the first time on appeal.

It may be pertinent here to observe that at one time an effort was made to amend what is now section 4866 so as to add thereto to the proviso, "provided, however, that the accused can, by consent entered of record, waive this privilege." But the General Assembly rejected the amendment. *Matthews* v. *Com.*, 18 Gratt. (59 Va.) 989, 995.

In *Matthews* v. *Com.*, 18 Gratt. (59 Va.) 989, Samuel Matthews and Cordelia Garner were brought to trial on an *information* filed by the Commonwealth's attorney charging them with murder. They plead not guilty, were separately tried, and convicted, Matthews of murder in the first degree and Cordelia Garner of murder in the second degree. Neither during the trial, nor by motion in arrest of judgment, was the objection made that they had not been indicted for the felony for which they were tried; but the point was raised for the first time in this court on appeal. Nevertheless this court reversed both judgments for that reason alone.

In its opinion, rendered by Moncure, P., the court says (italics mine):

"It was argued by the Attorney-General, that if the plaintiffs in error were entitled to require that they should not

be put upon trial for the murder of which they were accused unless an indictment should have first been found against them therefor by a grand jury, yet that it was a personal privilege, intended for their benefit, which they might therefore waive; and that they did waive it, by pleading not guilty to the information without objection and by omitting to make any motion in arrest of judgment. There may be some doubt whether the privilege is such a one as that they could waive it, especially if it be a constitutional right. (See what is said on this subject in *Cancemi* v. *People*, 18 N. Y. 128, * * *.) *But certainly, if they could waive the privilege, they ought not to be considered as having done so, without the clearest evidence of their having well understood that they had the privilege, and of their having intended to waive it.* There is no such evidence in this case."

What is said in that case on the subject of waiver applies equally as well to the case at bar. There is no evidence that the accused intended to waive his right to insist that he could be tried for no other felony than that for which he stood indicted.

Had he waited until after the verdict to raise this point, or until the Commonwealth had suffered some prejudice by his delay, there would be more force in the contention that he had waived his right to insist that he could not be convicted for any felony other than that for which he stood indicted. But he did not do this.

In the instant case it is clear beyond question that the Commonwealth was in no way prejudiced by the fact that the accused waited to raise the point on the instructions, instead of doing so when the Commonwealth's attorney announced his election to try him under section 4438; and in my opinion there is no sound reason for applying the doctrine of waiver and estoppel. Certainly the fact that the court may be of opinion upon a consideration of the evidence that the accused ought to have been indicted, tried

and convicted of the greater crime is not a valid legal reason for applying the doctrine of waiver or estoppel here or refusing to the accused any statutory or common-law right which he had.

What is said with reference to waiver and estoppel in *McCue* v. *Com.*, 103 Va. 870, at page 1006, 49 S. E. 623, and cases in which that case has been cited, is said with reference to objections made for the first time after verdict and with reference to errors far less fundamental than that in question here. There is nothing in those cases to indicate that what was there said was intended to apply to a case such as that here under consideration.

But if it be a correct conclusion of law that the indictment was, in effect, amended so as to charge breaking and entering with intent to commit murder, rape or robbery, I do not concur with the court in holding that this is such an amendment as is authorized by section 4877 and section 4878 of the Code.

Section 4877 provides that before plea filed, "a defective indictment" for felony may be amended by the court in any way that *"does not change the character of the offense."*

Section 4878 provides that after plea filed the court may amend an indictment for felony, *"provided such amendment does not change the nature of the offense charged."*

While murder in the first degree, murder in the second degree, voluntary manslaughter, and involuntary manslaughter are all degrees of felonious homicide, each is a crime of an essentially different character or nature from any of the others.

So also, I think, breaking and entering with intent to commit a felony *other than* murder, rape or robbery is a crime of an essentially different character or nature from breaking and entering with intent to commit murder, rape or robbery; and that no liberality of construction can obliterate the essential difference between the two crimes.

There is a world of facts which lies outside and beyond the world of words, and facts are stubborn things.

The court in its opinion says: "The two sections (4438 and 4439) might well have been combined for they refer directly though not solely, to, and define as an offense, the breaking and entering of a dwelling house in the daytime, with intent to commit murder, rape or robbery (4438), or larceny, or any felony other than murder, rape or robbery (4439). The overt acts constituting the crime are the same— that is, the breaking and entering. The intent with which the particular crime is committed does not change its general nature or character, because whichever intent is shown, the crime is of the same nature—that is, a felony of the specific class denounced by the statute. That the punishment for such a crime differs with the differing intent does not within the meaning of Code, section 4878, authorizing amendment to indictments, change the nature of the crime charged."

It is true that the provisions of sections 4437-4439 of the Code relating to felonious breaking and entering a dwelling house might have all been incorporated in one section of the Code. It is equally true that the provisions of sections 4393-4397 of the Code relating to felonious homicide might have all been incorporated in one section of the Code. But where this to be done in both cases, in what way would it operate to obliterate the essential difference between the several crimes consistuting the four degrees of felonious homicide or the essential differences between the three degrees of felonious breaking and entering a dwelling house?

The overt act in breaking and entering a dwelling house with intent to commit a misdemeanor, which is a mere trespass, and the overt act in breaking and entering a dwelling house with intent to commit murder, rape or robbery, one of the most serious felonies in the catalogue of crime, is the same. Yet, if I understand the reasoning of the court

as the overt act is the same in both cases, it would hold these two crimes to be of essentially the same nature or character.

An indictment for involuntary manslaughter may be so changed as to charge murder in the first degree, without making any change in the overt act charged, by merely inserting a charge that the killing was done with a different mental attitude, that is, wilfully, deliberately and premeditatedly with malice aforethought. While no change in the overt act charged will have been made, my reason tells me that there will have been a most radical change in the nature or character of the crime charged. Yet, if we are to follow the reasoning of the court, which is that so long as the overt act charged is not changed a change in the intent (mental attitude) of the accused charged does not change the nature or character of the crime charged, we are to be solemnly told that the character or nature of the crime has not been changed; or, to state it differently, that there is no essential difference between involuntary manslaughter and murder of the first degree, for both are felonious homicides of the specific class denounced by the statute.

The court in its opinion would seem to construe section 4877 and section 4878 to read: "Provided such amendment does not change the *general* nature or character of the offense charged, *and so long as the overt act charged remains the same such amendment shall not be deemed to change the nature or character of the offense charged.*"

Liberal construction unquestionably has its place in the interpretation of statutes; but in the light of the clear and positive mandate of section 4866, the language of which the General Assembly has not seen proper to repeal or modify, and the purpose of that statute and the common-law rule thereby made statutory, I am of opinion that such liberality of construction is not here permissible.

The court cites *Jenninas* v. *Com.*, 133 Va. 726, 112 S. E.

602; *Young* v. *Com.*, 155 Va. 1156, 156 S. E. 565; and *Kelley* v. *Com.*, 140 Va. 522, 125 S. E. 437, as supporting its views on this point.

In *Jennings* v. *Commonwealth* the only amendment made was in the bill of particulars.

In *Young* v. *Commonwealth* the only amendment made was to strike out the word "feloniously" in an indictment which plainly charged nothing but a misdemeanor.

*Kelly* v. *Commonwealth* was a prosecution for a violation of the prohibition law, in which the court held the indictment as found charged only a misdemeanor, permitted the superfluous word "feloniously" to be struck out, and the misdemeanor charge to be so amended as to charge the prior conviction was had under a different section of the prohibition statute from that alleged in the indictment. Much stress is laid by the court on the fact that the charge of a prior offense in this case did not in any way change the offense charged, but merely authorized a greater punishment therefor than would have otherwise been authorized.

There is no statute prohibiting the putting of a person on trial for a misdemeanor unless an indictment shall have been first found.

The court further says in its opinion: "The manifest purpose of this statute (section 4877 and section 4878) is to allow amendments which avoid unnecessary delays and further the ends of justice, without prejudice to the substantial right of the accused to be informed of the accusation, and to one fair trial on the merits."

It seems to me that both here and in the language quoted by the court from *Kelley* v. *Com.*, 140 Va. 522, 125 S. E. 437, the right of the accused to demand that he be not put upon trial for a felony for which he has not been indicted has been confused with his right to be informed of the accusation against him.

I think an accused still has the right to demand that he

be not put upon trial for any felony which is not substantially charged in an indictment found by a grand jury. If this be true, and he be denied this right, he has not had a fair trial on the merits in contemplation of law, even though he may have been furnished by the Commonwealth's attorney with the most detailed notice of the crime with which he is charged and for which it is proposed to try him, and the evidence introduced shows that he is guilty of the crime for which he is tried. Notice cannot take the place of an indictment for a felony. Nor does the fact that a man is guilty of the crime for which it is sought to try him, authorize his trial for that crime until he has been indicted therefor.

Acquiescence by the accused in being tried for murder upon an information filed by the Commonwealth's attorney, shown by the accused pleading not guilty and making defense at the trial, was held in *Matthews* v. *Com.*, 18 Gratt. (59 Va.) 989, not to operate to waive the right of the accused to raise for the first time in this court the objection that he has been tried for a felony for which he has not been indicted.

It is a little difficult then for me to understand why the fact that this accused waited until the court came to instruct the jury to object to being tried for a felony different from that for which he had been indicted, should operate as a waiver of that objection.

The accused may be responsible for the court's permitting the Commonwealth to proceed with the taking of evidence upon the assumption that the accused was being tried for breaking and entering with intent to commit murder, rape or robbery; but he is certainly not responsible for the court's having instructed the jury that he might be convicted of breaking and entering with intent to commit murder, rape or robbery, for he objected to the instruction and pointed out this error in it.

Nor am I able to concur in the last of the several reasons given by the court for sustaining the judgment of the court,

which is this: Even if the instruction objected to was erroneous, this error "should be held immaterial under the circumstances of this case," because the term fixed by the jury is within the limits of the sentence which might have been imposed upon him for breaking and entering with intent to commit a felony other than murder, rape or robbery. For, says the court, "he might have been prosecuted under either section (section 4438 or section 4439), and the fact that the jury refused to fix the minimum allowance under section 4438, *i. e.*, three years, suggests the conclusion that as they exceeded that minimum, they would, under the same testimony, also have exceeded the one year (or other lesser penalty) authorized, *had he been prosecuted under section 4439.*" (Italics mine.)

In the light of the fact that the court predicates its whole opinion on the premise that the indictment was, in effect, amended, when this reasoning is read in conjunction with the other portions of the opinion, it seems to me that the court here in effect says:

It is true that the accused has been tried and convicted for a felony for which he was not indicted, but the indictment was in effect amended so as to charge the felony for which he was tried and convicted; and even if the court illegally, and without authority so to do, made this amendment, and this objection was made in ample time, that is harmless error; because the jury did not give him the minimum punishment for the crime for which he was tried and convicted, and therefore, as the evidence would have been the same had he been tried only for the crime for which he was indicted, it is *probable* that the jury would have given him the same punishment.

I had not understood this to be the law in Virginia, and I have found no case in which it has heretofore been held to be the law. Nor does the court cite any case in which it has been held to be the law.

In a criminal case the doctrine of harmless error, as I understand it, is that error will be held to be harmless only when it affirmatively appears from the whole record that no prejudice could have resulted from the error. Unless this affirmatively appears the error is presumed to be harmful and is reversible error. The error in the instant case is not merely that the court told the jury that the minimum punishment it could inflict was greater than the minimum punishment provided by law for the crime for which he was indicted. There is coupled with this error the fact that from the language used by the court the jury must have been impressed with the fact that the trial court took the view that, if the evidence proved the accused guilty of anything, it proved him guilty of a more heinous crime than that for which he was indicted, an essential element of which was an intention to murder Joe Nash.

In considering whether this language of the court could have had the effect of influencing the jury to impose a greater sentence than it otherwise would have imposed, we may not properly, I think, entirely disregard this language included in the instruction, though it was not made the subject of an objection until here on appeal: "Rid your minds of whether or not this was a bootlegging joint or not, and treat it as if it were the home of any other man in this city, white or colored, *and do not let the fact that it was a bootlegging joint have any influence on you.*" (Italics mine.)

The testimony in this case is conflicting. The testimony of the accused and his witnesses, who support the testimony of the accused, if believed, proves that, though he entered the house of Joe Nash, he did not break into the house or enter it with intent to do Joe Nash any bodily injury. In the light of the fact that this was a "bootlegging joint" in which the accused had repeatedly, and even earlier in the day here in question, purchased intoxicating liquors, this

testimony might be true; while on its face it would be un-believable were this the home of respectable law abiding people.

It is as much a crime to break and enter a bootlegger's dwelling with intent to maim, disfigure, disable and kill him, as it is to break and enter the dwelling of any other person with like intent. But in the light of the evidence introduced by the accused he was entitled to have the jury, while con-sidering both whether he had broken and entered *and the intent with which he entered*, bear in mind that the dwelling in question was a place at which intoxicating liquors were sold and at which the accused had theretofore procured intoxicating liquor; and the jury should not have been told to rid their minds of and entirely disregard this fact.

No objection was taken to this error at the time, and it cannot here, in and of itself, be made the subject of an assignment of error; but it is so intimately connected with the error to which objection was made, that if resort must be had to the doctrine of harmless error as the ground for not reversing this case, it seems to me that the error objected to should be considered in the light of the possible effect of this other error. When so viewed I am unable to say as a matter of law that from the whole record it affirmatively appears that the accused *could not* have been prejudiced by the error to which objection was made.