**Richmond**

JIMMY CRAIG WILLIS

v.

COMMONWEALTH OF VIRGINIA

No. 0139-88-2

Decided June 5, 1990

432

Gilbert K. Davis; Buddy H. Wallen (Gilbert K. Davis, Davis and Associates; and Buddy H. Wallen, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Jimmy Craig Willis was convicted of second degree murder in violation of Code § 18.2-154 for maliciously shooting into an occupied motor vehicle which resulted in the death of the driver, sixteen year old Billy Stewart. He was also convicted of use of a firearm in the commission of murder in violation of Code § 18.2-53.1. The trial court sentenced Willis in accordance with the jury verdict to ten years in the penitentiary for murder and two years for use of the firearm.

Willis challenges the murder conviction on three grounds: (1) the trial court improperly permitted the indictment to be amended on the morning of trial to change the offense from maliciously shooting into an occupied vehicle to murder; (2) that Code § 18.2-154 is unconstitutionally vague because it permits the judge or jury to determine whether the murder is first or second degree without specifying any criteria that must be proven in order to differentiate between the degrees;[1] and (3) that the evidence was insufficient to prove that the shooting was malicious, which was necessary to sustain a murder conviction. If the murder conviction is reversed on either ground, the firearm conviction, which is dependent upon the validity of the murder conviction, must also be reversed. Willis also contends that the court erred in failing to give proffered instructions and in refusing to grant his motion for a continuance when the indictment was amended.

---

[1] Code § 18.2-154 provides:

SHOOTING AT OR THROWING MISSILES, ETC., AT TRAIN, CAR, VESSEL, ETC. — If any person maliciously shoot at, or maliciously throw any missile at or against, any train or cars on any railroad or other transportation company or any vessel or other watercraft, or any motor vehicle or other vehicles when occupied by one or more persons, whereby the life of any person on such train or car, or on such vessel, or other watercraft, or in such motor vehicle or other vehicle, may be put in peril, the person, or persons so offending shall be guilty of a Class 4 felony; and, *in the event of the death of any such person, resulting from such malicious shooting or throwing, the person so offending shall be deemed guilty of murder, the degree to be determined by the jury or the court trying the case without a jury*. If any such act be committed unlawfully, but not maliciously, the person so offending shall be guilty of a Class 6 felony; and, in the event of the death of any such person, resulting from such unlawful act, the person so offending shall be deemed guilty of involuntary manslaughter (emphasis added).

The events which led to the charges against Willis occurred while he was on a hunting trip on January 1, 1987, in Lunenburg County. Just after dark on January 1, sixteen-year-old Billy Stewart and his friend, fourteen-year-old Brian Olha, were returning to the Stewart's vacation cottage in Stewart's pick-up truck from a nearby grocery store where they had gone to make a telephone call. On the drive home, Stewart and Olha observed two men standing along the roadway, motioning their vehicle to stop. The two men were Earl Delaney and Willis, who were in the area on a hunting trip. Due to inclement weather, the men had remained at the hunting camp drinking beer and wine until mid-afternoon, when they left camp to look for game. They were armed with rifles and a soft drink bottle half filled with whiskey, which they shared. Willis and Delaney did fire their rifles at some debris in the creek but did not see or shoot at any game. As dark approached, they became lost and when several local residents refused them use of their telephones to call their companions, the men began walking along Route 654, when the truck driven by Billy Stewart approached. The men informed the boys that they were lost and asked directions. The boys gave Willis and Delaney directions and agreed to give the two armed men a ride in the back of the pick-up truck. Billy Stewart had to turn his vehicle and drive in the opposite direction from which he was going on Route 654 in order to get the men to the intersection leading to their hunting camp, which was located approximately one mile along a dirt road which intersected with Route 654. When the boys reached the intersection of Route 654 and the dirt road, which Willis and Delaney were trying to locate, Billy Stewart refused the men's request to drive them to their campsite because he and Olha had to return home. The men offered to pay Stewart to drive them to their camp, but Stewart refused and requested that they get out of his truck. Willis climbed out of the truck and uttered some profanity and was followed by Delaney, who thanked the boys for the ride.

The men began walking down the dirt road toward their camp. Stewart turned his truck around and drove in the direction from which he had come. Within seconds, Olha heard two pings and turned to see that Billy Stewart was slumped over the steering wheel and that the truck's back window was shattered. As the truck started to veer off the road, Olha grabbed the steering wheel in an effort to control it, but it went off the road, struck a guy

wire, hit a building and flipped upside down. Olha pulled Stewart from the truck and ran for help.

Delaney testified that after alighting from the truck, he walked a few steps down the road in front of Willis when he heard Willis fire his rifle. Delaney estimated that the truck pulled away from the intersection and had travelled about two hundred feet at the time. Delaney turned toward Willis in time to observe from the truck's taillights that it veered off the road, struck something and turned upside down. Willis immediately exclaimed, "[L]et's go," and he and Delaney ran from the scene. Willis and Delaney became separated and that was the last time that Delaney saw Willis. Willis stayed in the woods that night until he returned to his campsite the following morning. When he returned to camp, his father informed him that the police were looking for him and he voluntarily turned himself in.

Forensic medical experts testified that Billy Stewart died from a brain injury caused by a single gunshot wound to the back of the head. At the time Stewart was shot, the bullet was tumbling and its jacket had already separated from the bullet core when it struck Stewart, indicating that it had hit an intermediate object before striking the victim.

Willis, in a written statement given to the police the morning he turned himself in, admitted that he fired his rifle as the truck drove away but claimed that he had fired into the air, not intending to shoot at the truck or anyone. He explained that when he saw the truck's brake lights come on and veer off the road and sparks fly, he panicked and ran. Willis admitted drinking two bottles of wine during the day but denied using drugs.

At trial, Willis contended that the shooting was accidental. He testified that he was carrying the gun at his waist, parallel to the ground and pointing in the direction in which the truck was travelling. He introduced evidence showing that the angle between himself and the truck, from the intersection of the two roads, would have placed the truck in line with the direction which the rifle would have been pointed when carried in this manner. Willis stated that he did not know why he had fired his rifle. An expert witness in the effects of alcohol on the human body testified for Willis that Willis would have been intoxicated at the time he fired the shot and that his vision and ability to think rationally would

have been affected. Two ballistics experts testified that the missing bullet jacket indicated that the bullet probably had struck a hard, intermediate object before hitting Billy Stewart, causing the jacket to separate from the core. A defense expert testified that, in his opinion, based on the size of the hole in the window of the truck and that the bullet jacket was not recovered from the scene of the crash, the bullet had struck another object and ricocheted prior to striking the truck window. The Commonwealth's expert testified that, in his opinion, the jacket could have separated from the bullet core when it struck the truck's window.

## I. *Amending the Indictment*

The Commonwealth indicted Willis for murder in violation of Code § 18.2-32, use of a firearm in commission of murder in violation of Code § 18.2-53.1, and for maliciously shooting at or against an occupied vehicle in violation of Code § 18.2-154. Prior to the October 7, 1987 trial, the Commonwealth's attorney informed defense counsel by letters dated August 20, 1987, and October 2, 1987, that he intended to prosecute Willis for murder under Code § 18.2-154, rather than under Code § 18.2-32. On the morning of trial, on motion of the Commonwealth's attorney, the court permitted an amendment to the indictment which charged Willis with violating Code § 18.2-154 for shooting into an occupied vehicle. The amended indictment added language that the shooting resulted in the death of an occupant of the vehicle. The trial court contemporaneously granted the motion to *nolle prosequi* the murder charge in violation of Code § 18.2-32.

Willis contends that the amendment to the indictment substantially changed the charge by elevating the offense from maliciously shooting into an occupied vehicle, a Class 4 felony carrying a maximum penalty of ten years imprisonment, to first or second degree murder, either a Class 2 or 3 felony potentially carrying a maximum penalty of life imprisonment. He claims that this amendment changed the nature and character of the offense from a property crime defined in Chapter 5 of Title 18.2, to a crime against the person codified in Chapter 4 of Title 18.2. Willis argues that an amendment which charges a new offense can only be accomplished by reindictment by a grand jury, not by motion of the prosecutor and an amendment by the trial judge. Further-

more, he contends that even if the amendment were proper, the trial court abused its discretion by denying his request for a continuance to allow him an opportunity to prepare his defense to this "new and unusual charge."

Code § 19.2-231 and its predecessors authorize trial courts to amend indictments, provided the amendment does not change the nature and character of the offense. The statute authorizes a trial court to amend indictments in two instances: where there is a defect in form, or where there is a variance between the allegations and the evidence, provided the amendment does not change the nature or character of the offense charged. The statute is remedial in nature and is to be liberally construed in order to achieve the laudable purpose of avoiding further unnecessary delay in the criminal justice process by allowing amendment, rather than requiring reindictment by a grand jury. *Sullivan v. Commonwealth*, 157 Va. 867, 876-77, 161 S.E. 297, 300 (1931). The amendment, when allowed, must provide that the substantial rights of the accused are protected by informing him of the nature and character of the accusations. *Id.*

The amended indictment did not change the "nature or character of the offense charged." Code § 19.2-231. Prior to the amendment, the indictment charged Willis with violating Code § 18.2-154 by "feloniously and maliciously shoot[ing] at or against an occupied vehicle whereby the life of a person therein may have been placed in peril." Although the original indictment did not contain a separate averment that the felonious shooting caused the death of an occupant of the vehicle, the allegation that Willis' acts violated Code § 18.2-154 incorporated the offenses proscribed therein by reference and was sufficient to charge him with those offenses which are proscribed by that section of the criminal code, including murder. *See Reed v. Commonwealth*, 3 Va. App. 665, 667, 353 S.E.2d 166, 167 (1987); *Cantwell v. Commonwealth*, 2 Va. App. 606, 608-09, 347 S.E.2d 523, 524 (1986). The amended indictment satisfied the requirements of Code § 19.2-220 in that it provided a "plain, concise, and definite written statement. . . describing the offense charged" by detailing the date, place, and nature of the acts which Willis was alleged to have committed and by "cit[ing] the statute. . . that defines the offense." It fulfilled the function of an indictment, which is to give an accused notice of the nature and character of the accusations against him in or-

der that he can adequately prepare to defend against his accuser. Va. Const. art. I, § 8; *Hairston v. Commonwealth*, 2 Va. App. 211, 213, 343 S.E.2d 355, 357 (1986).

■ Because the original indictment was sufficient to have prosecuted Willis for murder, the amendment did not change the nature or character of the acts which the indictment alleged that Willis had committed. The amendment clarified that those same acts "thereby caus[ed] the death of one William A. Stewart, an occupant of said motor vehicle." As to Willis' claim that the amendment affected a change which subjected him to a more severe penalty than could have been imposed had he been convicted under the original indictment, that argument is necessarily addressed by our earlier holding that the original indictment was sufficient to have prosecuted Willis for murder. Nevertheless, where "[p]recisely the same conduct on the part of the accused was charged in the amended as in the original indictment" the fact that the amendment specified that the offense being prosecuted is that proscribed by the statute which carried the most severe penalty does not change the nature or character of the offense charged. *See, e.g., Sullivan*, 157 Va. at 877, 161 S.E. at 300.

■ On the facts of this case, the trial court did not err in finding that the amendment did not surprise the defendant or his counsel, thereby requiring a continuance. Generally, a motion to grant a continuance rests within the sound discretion of the trial court. *Snurkowski v. Commonwealth*, 2 Va. App. 532, 535, 348 S.E.2d 1, 2 (1986). However, Code § 19.2-231 mandates that when an amendment operates as a surprise to the accused he shall be entitled, upon request, to a continuance of the case for a reasonable time. Willis initially had been separately indicted for violating Code § 18.2-154 and for murder in violation of Code § 18.2-32. When the Commonwealth's attorney made clear to the defense in two letters as early as two months before trial, and at a pretrial conference, that he intended to proceed with a murder prosecution based upon the indictment which charged a violation of Code § 18.2-154, rather than Code § 18.2-32, neither the defendant nor his counsel could claim that the amendment surprised them. They knew well in advance of trial the nature and character of the charges and the theory upon which the Commonwealth was proceeding. Because the accused had been specifically charged

with murder in violation of Code § 18.2-32, and was implicitly charged with murder in violation of Code § 18.2-154, and because the accused and his counsel were expressly informed by the Commonwealth's attorney that he intended to prosecute for murder in violation of Code § 18.2-154, Willis cannot be heard to complain of surprise. Since credible evidence supported the trial court's finding that the defense was not surprised by the amendment, the court did not err in refusing to grant the motion for a continuance.

## II. *Vagueness of the Statute*

Code § 18.2-154 provides, in pertinent part:

> If any person maliciously shoot at. . . any motor vehicle. . . when occupied by one or more persons, whereby the life of any person. . . in such motor vehicle. . . may be put in peril, the person or persons so offending shall be guilty of a Class 4 felony; and in the event of the death of any such person, resulting from such malicious shooting. . . the person so offending shall be deemed guilty of murder, *the degree to be determined by the jury or the court trying the case without a jury.*

(emphasis added). That provision in the statute which declares that a homicide resulting from the malicious shooting into an occupied vehicle shall be deemed murder has been part of the statute since its enactment in 1904. *See* 1904 Va. Acts ch. 170 p. 293. There is no reported instance of a murder prosecution under this statute in the eighty-six years since its enactment.

The constitutionality of the statute is challenged on the theory that the provision which authorizes the judge or jury to determine the degree of murder grants unfettered discretion for them to determine the degree of the offense and the punishment. That provision, argues Willis, renders the statute so vague and uncertain that it fails to satisfy constitutional due process requirements. Specifically, he asserts that because the statute contains no criteria by which the fact finder is to be instructed on how to differentiate between the degrees of murder, the provision is so standardless that it fails to provide courts with guidance as to what elements distinguish first from second degree murder. Trial courts

are given unbridled discretion, according to Willis, to adopt whatever criteria that they deem appropriate in a given case, which is a legislative, rather than a judicial, function.

We hold that Code § 18.2-154 is not unconstitutionally vague as applied to Willis. Therefore, we reject his effort to challenge the facial constitutionality of the statute and uphold the murder conviction under Code § 18.2-154.

The Commonwealth argues that the statute, by making reference to the degrees of murder, incorporates by reference those degrees of murder recognized in Code § 18.2-32, the common law degrees of murder. Thus, argues the Commonwealth, the legislature intended that the degrees of murder under the malicious shooting statute are to be delineated based upon those elements which distinguish the degrees of murder at common law. In other words, maliciously shooting into an occupied vehicle whereby the life of an occupant is endangered constitutes second degree murder when an occupant is killed as a result thereof; in order for the Commonwealth to elevate the offense to first degree murder under Code § 18.2-154, the Commonwealth must prove beyond a reasonable doubt that the act of shooting into the occupied vehicle was willful, deliberate, and with premeditation. Thus, argues the Commonwealth, the trial court properly construed the statute, as the legislature intended, that first degree murder requires proof of a willful and premeditated shooting into an occupied vehicle; however, if the act was done maliciously but with no willful, premeditated intent to shoot into the occupied vehicle, the killing is second degree.

Willis argues that the Commonwealth's approach demonstrates the vagueness of the statute because not only did the trial court have to resort to borrowing from other statutes to define the offense, it had to modify the elements in order to differentiate between the degrees of the offense under this statute. Under Code § 18.2-32, the element which distinguishes first degree from second degree murder is that the Commonwealth must prove a willful, deliberate, and premeditated "intent to kill or do serious bodily harm to another." However, in the context of the trial court's interpretation of Code § 18.2-154, the element of intent was modified to provide that the specific intent which would support first degree murder was the willful, deliberate, and premeditated "intent to shoot into an occupied vehicle," and not a specific intent to

kill or do serious bodily harm. Willis argues that when a statute is so ambiguous that the offense is not clearly defined, trial courts are not to fulfill the legislative function. He contends that the trial court could have elected to adopt some other criteria to distinguish between the degrees of murder, or could have determined that the legislature intended to incorporate the common law distinction requiring proof of a willful, premeditated intent to kill. Thus, according to Willis, the vagueness of the statute is apparent on its face because it fails to define clearly the elements of the offense.

Legislative enactments come before courts with a strong presumption of constitutionality, and they will not be stricken down as repugnant to the constitution unless their invalidity clearly and conclusively appears. *See Almond v. Day*, 197 Va. 782, 794, 91 S.E.2d 660, 669 (1956); *Willis v. Kalmbach*, 109 Va. 475, 478, 64 S.E. 342, 344 (1909). "Although penal laws are to be construed strictly, they 'ought not to be construed so strictly as to defeat the obvious intention of the legislature.'" *Huddleston v. United States*, 415 U.S. 814, 831 (1974). If legislation is subject to one or more constructions, one or more of which would render the statute constitutional, courts may adopt "a construction [which] will tailor the statute to a constitutional fit." *Coleman v. City of Richmond*, 5 Va. App. 459, 462, 364 S.E.2d 239, 241 (1988); *cf. Parker v. Levy*, 417 U.S. 733, 752-54 (1974). Where, however, legislation is vague and uncertain because the legislature has failed to define prohibited conduct with sufficient clarity to provide a reasonably intelligent person fair notice of what is prohibited, that portion of the enactment which is vague is also void. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *see Giaccio v. Pennsylvania*, 382 U.S. 399, 403 (1966).

The legislature, when it enacted the predecessor to Code § 18.2-154, clearly intended to make punishable as murder the killing of an occupant of a motor vehicle resulting from a malicious shooting into the vehicle whereby the life of any person in the vehicle is put in peril. To constitute murder under Code § 18.2-154, as applied to this case, there is no ambiguity; the elements are clear. The Commonwealth must prove beyond a reasonable doubt that the accused committed (1) a malicious shooting, (2) at or against a motor vehicle, (3) when occupied by one or more persons, (4) whereby the life of any person in such motor vehicle may

be put in peril, and (5) the death of any such person results therefrom. That conduct which the legislature intended to be deemed murder is definite and unambiguous. In Virginia, every malicious killing is *prima facie* second degree murder. The burden is on the Commonwealth to elevate the grade of the offense to first degree. *Painter v. Commonwealth*, 210 Va. 360, 364, 171 S.E.2d 166, 169-70 (1969).[2] Accordingly, a homicide resulting from maliciously shooting into an occupied vehicle is presumptively second degree murder. Any ambiguity, if such does exist, is created by allowing the judge or jury to determine what element or elements are required in order to elevate the offense to first degree murder.

(10) However, before considering whether that aspect of the statute is so vague as to be void, we must first decide whether a determination that the provision is unconstitutional would render the statute unconstitutional or would void all murder convictions. Courts are required to apply the least intrusive remedy, and unless the provision alleged to be unconstitutionally vague was the inducement for the act or is so connected or dependent upon the remaining portion that the good cannot remain without the bad, then the entire murder provision must be stricken. *See King v. County of Arlington*, 195 Va. 1084, 1092, 81 S.E.2d 587, 592 (1954).

> The rule is that an act may be valid in one part and invalid in another, and if the invalid is severable from the remainder, that invalid part may be ignored, if after such elimination the remaining portions are sufficient to accomplish their purpose in accordance with the legislative intent; and that only if the void portion is the inducement to the passage of the act or is so interwoven in its texture as to prevent the statute from becoming operative in accordance with the will of the legislature, is the whole statute invalid.

*Strawberry Hill Land Corp. v. Starbuck*, 124 Va. 71, 77, 97 S.E. 362, 364 (1918); *see Chesapeake & Ohio Canal Co. v. Great Falls Power Co.*, 143 Va. 697, 705, 129 S.E. 731, 734 (1925), *cert. denied*, 270 U.S. 650 (1926). If the doctrine of severability

---

[2] Code § 18.2-32 has maintained the common law distinctions between first and second degree murder, but has also recognized that murder accomplished by certain means shall be first degree without separately proving that the killing was willful, deliberate, and premeditated.

applies so that the provision which authorizes the judge or jury to determine the degree of murder can be severed, and the remaining portion of the statute clearly proscribes an offense as murder and sufficiently designates the punishment therefor, the defendant who was adjudged guilty of second degree murder cannot challenge that aspect of the statute which does not effect him. "One who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injure[d] him." *Premier-Pabst Sales Co. v. Grosscup*, 298 U.S. 226, 227 (1936).

As noted, Code § 18.2-154 clearly defines the elements necessary to prove that offense which shall be deemed murder. The manifest intent of the legislature was to declare and punish as murder an unlawful killing resulting from maliciously shooting into a motor vehicle. In Virginia, every homicide is presumed to be second degree murder. To elevate murder to first degree the Commonwealth must prove additional aggravating factors. Thus, even if Code § 18.2-154 fails to define the necessary aggravating factors to elevate the offense to first degree murder, that portion of the statute which defines the criminal acts and deems them to be murder is not invalid. Severability, as applied to Code § 18.2-154, is not unlike the state murder statutes and convictions thereunder which have been upheld by the United States Supreme Court, even though provisions in the statutes allowing for capital punishment were declared vague, arbitrary, and unconstitutional. *See Furman v. Georgia*, 408 U.S. 238, 239-40 (1972) (death penalty unconstitutional but conviction undisturbed); *Rose v. Hodges*, 423 U.S. 19, 22 (1975) (murder statute and conviction for capital murder upheld as valid where governor commuted death sentence to 99 years even though capital murder provisions were unconstitutional).

Accordingly, we hold that the aspect of Code § 18.2-154 which Willis challenges as unconstitutional that would allegedly allow the judge or jury unfettered discretion to determine what constitutes first degree murder is severable from those provisions of the statute which define the offense of murder, which is deemed second degree. Since Willis was not convicted of first degree murder, he was unaffected by the alleged vagueness of the statute. For this reason, we do not decide whether that portion of the statute is unconstitutionally vague or whether the trial court properly in-

structed the jury on the requisite elements of first degree murder.

### III. *Jury Instructions*

 Willis next contends that the trial court erred by refusing his proffered instructions X, XX, and XXXX, which successively defined murder and involuntary manslaughter and the punishment in language tracking Code § 18.2-154. Instruction XXXX gave a definition of malice. Paragraph 2 of Instruction 1, which the court gave, properly instructed the jury on the elements of second degree murder under Code § 18.2-154 and the range of punishment; paragraph 3 of the same instruction properly informed the jury of the elements of involuntary manslaughter under Code § 18.2-154. Instruction No. 2 told the jury what is required to find malice. "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Stockton v. Commonwealth*, 227 Va. 124, 145, 314 S.E.2d 371, 384, *cert. denied*, 469 U.S. 873 (1984). The trial court did not err in refusing instructions X, XX, and XXXX.

### IV. *Use of Firearm*

Willis contends that the gravamen of any offense under Code § 18.2-154 is "maliciously shooting" and, therefore, even though an offense thereunder may be deemed murder, a necessary element of the offense is use of a firearm. Thus, he argues that "murder" as contemplated in Code § 18.2-53.1, which declares as a separate offense the use of a firearm in the commission of murder, does not apply to offenses where the definition of murder, as with Code § 18.2-154, requires the use of a firearm, such as here, where there must have been a "malicious shooting." Where use of a firearm is a necessary element of both offenses, separate convictions, he argues, would be duplicitous and constitute double jeopardy. We reject the argument.

 No double jeopardy violation occurs where multiple convictions and punishments are obtained where "[t]he General Assembly has clearly indicated its intent to impose multiple punishment." *Turner v. Commonwealth*, 221 Va. 513, 529-30, 273 S.E.2d 36, 46-47 (1980), *cert. denied*, 451 U.S. 1011 (1981). Code § 18.2-53.1 is designed to deter violent criminal conduct by

imposing inflexible penalties. *Holloman v. Commonwealth*, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980). We find no logical basis to conclude that the multiple punishment provided in Code § 18.2-53.1 for using a firearm to commit murder should not apply because murder under Code § 18.2-154 may be established by proving use of a firearm. Murder under Code § 18.2-154 may be accomplished by means other than shooting, just as murder under Code § 18.2-32 may be accomplished without using a firearm. However, murder under Code § 18.2-32 accomplished with a firearm does not preclude a conviction under Code § 18.2-53.1. For the same reason, murder under Code § 18.2-154 accomplished by a "malicious shooting" does not preclude a conviction under Code § 18.2-53.1.

## V. *Sufficiency of the Evidence*

Finally, Willis argues that the evidence was insufficient to prove second degree murder in violation of Code § 18.2-154. We do so by viewing the evidence in the light most favorable to the Commonwealth and according to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Having previously reviewed the evidence and the elements of the offense, we hold that the Commonwealth did prove that Willis maliciously shot into an occupied motor vehicle whereby the lives of the occupants were placed in peril and as a result thereof Billy Stewart was killed. The conviction is affirmed.

*Affirmed.*

Barrow, J., and Keenan, J., concurred.