COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia

ROBERT LYLE YINGLING

v.          Record No. 1149-94-1          OPINION BY
                                          JUDGE RICHARD S. BRAY
COMMONWEALTH OF VIRGINIA                   DECEMBER 5, 1995

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Norman Olitsky, Judge

Dianne G. Ringer, Assistant Public Defender
(Office of the Public Defender, on brief), for
appellant.

Linwood T. Wells, Jr., Assistant Attorney
General (James S. Gilmore, III, Attorney
General, on brief), for appellee.


Robert Lyle Yingling (defendant) was convicted in a bench trial of an escape by "Furlough Violation," conduct proscribed by Code § 53.1-37(D).  On appeal, defendant challenges the sufficiency of the evidence to support the conviction.  We affirm the judgment of the trial court.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it.  Id.

The pertinent facts are not in dispute.  Defendant, then an inmate at the Southampton Work Release Center (Southampton),[1] was

_____

[1]An institution of the Virginia Department of Corrections.

approved for a thirty day "furlough" pursuant to Code § 53.1-37(C), which authorizes the Director of the Department of Corrections (Director) to "permit a prisoner a furlough when the prisoner has been approved for release on parole by the Parole Board and thirty days or less remain to be served by the prisoner prior to his date of release on parole."  Such furloughs "extend the limits of confinement of any prisoner . . . to permit . . . visiting . . . home or family," subject to "rules and regulations" prescribed by the State Board of Corrections.  Code § 53.1-37(A).  A willful failure by a "prisoner . . . to remain within the limits of confinement set by the Director" shall constitute an "escape . . . as though he left the state correctional facility itself."  Code § 53.1-37(D).

As a condition to his furlough, defendant executed an "Extended Furlough Agreement," which required, inter alia, that he report to the "Chief Probation and Parole Officer, Probation and Parole District #3[,] . . . Portsmouth, Va." within "one working day" after his release.  The agreement further directed that defendant thereafter "report to the supervising Probation and Parole Officer as he/she may require . . .[,] follow any other instructions the officer may give," "obey all . . . laws and ordinances," and "not use, possess or distribute illegal drugs."[2] Supervision of defendant's furlough and enforcement of all related conditions were assigned to Portsmouth parole officer Albert

[2]Defendant agreed to provide "urine or blood samples if required."

McCloskey, with the understanding that violations would be reported to officials at Southampton for appropriate action.

Shortly after defendant's furlough commenced, he submitted a required urine specimen to McCloskey which tested "positive for marijuana use." McCloskey immediately requested instructions from Southampton and ordered defendant to report to the Portsmouth parole office the following morning. Defendant appeared as instructed, acknowledged using the drug while on furlough, and McCloskey directed that he "sit in the lobby, . . . remain in the lobby until further notice," warning that "if he left the building . . . he could be charged with escape." McCloskey allowed defendant to "smoke a cigarette" "on the steps in front of the building," provided "he let the receptionist know before he did that," but denied his request to "get something to eat."

At approximately 1:05 p.m., McCloskey learned that defendant "was no longer in sight" of the parole office. McCloskey searched for defendant both inside and outside the office without success, and defendant "never came back" or made further contact with the parole office. He was arrested four days later in the City of Portsmouth on a warrant charging the subject offense.

Because the Commonwealth did not establish that defendant "left the City of Portsmouth while on furlough," defendant contends that the evidence was insufficient to prove that he willfully exceeded the prescribed "limits of confinement" in violation of Code § 53.1-37(D).

"When statutory construction is required, we construe a

– 3 –

statute to promote the end for which it was enacted, if such an interpretation can reasonably be made from the language used." Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 533 (1994). "The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). "Although penal laws are to be construed strictly [against the Commonwealth], they 'ought not to be construed so strictly as to defeat the obvious intent of the legislature.'" Willis v. Commonwealth, 10 Va. App. 430, 441, 393 S.E.2d 405, 411 (1990) (citation omitted). Moreover, "a statute should never be construed so that it leads to absurd results." Branch, 14 Va. App. at 839, 419 S.E.2d at 424.

Assuming, without deciding, that the statutory language "limits of confinement" contemplates only geographical or territorial considerations, the "Extended Furlough Agreement" required that defendant "report to the supervising . . . Parole Officer as he/she . . . may require and follow any other instructions the officer may give." (Emphasis added.) Thus, the Director clearly authorized the supervising parole officer, McCloskey in this instance, to assume institutional control of defendant. When McCloskey thereafter ordered defendant to remain in the lobby of the parole office, warning that noncompliance could result in a charge of "escape," he specifically established new and more restrictive "limits of confinement" governing defendant's furlough. Defendant's subsequent departure from the premises

therefore constituted an escape in violation of Code § 53.1-37(D).

Accordingly, we affirm the conviction.

<u>Affirmed.</u>